IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NENA BROCK, ANGELA COUVILLON, CHARLES HAMILTON, and GERALDINE PALMER, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. 4:18-02732 |
| | § | |
| ADELAIDA G. CRUZ and RENATO A. CRUZ, | § § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(6) ("Motion to Dismiss" or "Motion") [Doc. # 18]. Plaintiffs have filed a response,[1] and Defendants have replied.[2] The Motion is now ripe for decision. Based on the parties' briefing, relevant pleading, and pertinent legal authorities, the Court **grants** the Motion and **dismisses** the case **with prejudice**.

---

[1]   Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Response") [Doc. # 20].

[2]   Defendants' Reply in Support of Motion to Dismiss ("Reply") [Doc. # 21].

I.   **BACKGROUND**

   A.   **Procedural Background**

This case is a Fair Labor Standards Act ("FLSA") suit filed by Plaintiffs Nena Brock, Angela Couvillion, Charles Hamilton, and Geraldine Palmer to recover unpaid overtime. Defendants Adelaida Cruz and Renato Cruz have twice moved to dismiss Plaintiffs' lawsuit, *see* Docs. # 5, # 9, and Plaintiffs have twice amended their complaint in response, *see* Docs. # 6, # 14. Defendants move to dismiss a third time, asserting, among other things, that Plaintiffs' Second Amended Complaint [Doc. # 14] does not plead facts demonstrating Plaintiffs are entitled to FLSA protection. *See* Motion [Doc. # 18], at 4.

   B.   **Factual Background**

In their Second Amended Complaint, Plaintiffs allege that from at least January 1, 2015, to about July 27, 2017, they worked for Defendants as Licensed Vocational Nurses ("LVN"). Plaintiff's Second Amended Complaint [Doc. # 14], ¶ 8. According to Plaintiffs, Defendants operated an unnamed medical staffing agency which supplied LVN staffing support to various hospitals and other businesses throughout the Houston area. *Id.* ¶ 9. Plaintiffs' job duties included monitoring patients' vital signs, recording patients' intake of foods and output of fluids, dressing wounds, treating bedsores, and monitoring patient responses to medications and treatment. *Id.* ¶ 8. In completing these tasks, Plaintiffs claim they

2

used various supplies and equipment which were allegedly transported and purchased from other states through interstate commerce, such as stethoscopes, otoscopes, thermometers, and blood pressure apparatuses, among others. *Id.*

According to Plaintiffs, Defendants' unnamed business "engaged in hospital operations and focused on caring for sick and aged individuals." *Id.* ¶ 9. These sick and aged individuals allegedly traveled in from out of state. *Id.* Defendants' business, during the relevant year-and-a-half time period, employed more than two individuals and "had more than $500,000 in gross revenue." *Id.* Defendants set Plaintiffs' work schedules and hired, supervised, and evaluated Plaintiffs. *Id.* Defendants allegedly determined Plaintiffs' rate of pay for each staffing assignment and maintained all of Plaintiffs' employment records. *Id.*

Plaintiffs allege they "typically worked a significant amount of overtime," "routinely" working "in excess of 40 hours per seven-day workweek." *Id.* ¶¶ 10, 17. Plaintiffs allege they were paid the same hourly rate for all hours worked, even those over 40 in a workweek. *Id.* ¶ 10. Defendants allegedly represented to Plaintiffs that they did not have to pay overtime because Plaintiffs were independent contractors, an assertion Plaintiffs claim is false. *Id.*

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).

When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

4

## B. FLSA Coverage

"The FLSA guarantees overtime pay to employees engaged 'in the production of goods for commerce' ('individual coverage') or 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (emphasis omitted) (quoting 29 U.S.C. § 207(a)(1)). "Either individual or enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis omitted). "To survive a motion to dismiss, a complaint must allege facts that show coverage under the FLSA." *See Coleman v. John Moore Servs., Inc.*, No. H-13-2090, 2014 WL 51290, at *5 (S.D. Tex. Jan. 7, 2014); *Morrow v. J W Elec., Inc.*, No. 3:11-CV-1988-D, 2011 WL 5599051, at *2 (N.D. Tex. Nov. 16, 2011) (same); *Lindgren v. Spears*, No. H-10-1929, 2010 WL 5437270, at *3 (S.D. Tex. Dec. 27, 2010) (same).

Plaintiffs assert only enterprise coverage, so the Court focuses its attention on that theory.[3]

---

[3] To adequately plead individual coverage, a plaintiff must allege that, at times relevant to her claim, she was either "engaged in commerce" or "engaged . . . in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "Commerce" is defined by the FLSA as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b). The Fifth Circuit's test for the individual coverage "engaged in commerce" requirement is "whether the work is so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce
(continued…)

To adequately plead enterprise coverage, a plaintiff must allege that, at time relevant to her claim, she was "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Broken down, "an employee must first show that the employer is an 'enterprise,' and then show that the enterprise is 'engaged in commerce.'" *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 49 (D.D.C. 2015) (citing *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 55 (D.D.C. 2013)). *See Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009) (per curiam) ("We note that the existence of FLSA enterprise coverage is a two-step determination, and the [plaintiffs] must ultimately prove both steps."). "The employee has the burden to prove both steps to establish enterprise coverage." *Ray v. Yamhill Cmty. Action P'ship*, No. 3:11-CV-00196-BR, 2011 WL 5865952, at *3 (D. Or. Nov. 22, 2011).

The Court considers both requirements in turn.

---

(continued…)
as to be, in practical effect, a part of it rather than an isolated activity." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (per curiam) (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam)). "Employees are engaged 'in the production of goods for commerce' if they are involved with any 'incidental operation preparatory to putting goods into the stream of commerce.'" *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 935 (N.D. Tex. 2014) (quoting *W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 503 (1945)). Plaintiffs do not rely on this theory of coverage.

### 1. Existence and Scope of an "Enterprise"

The existence and scope of an "enterprise" play pivotal roles in enterprise coverage analysis. *Cf. Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 935 (N.D. Tex. 2014) ("[F]or enterprise coverage, the existence of an enterprise serves as the threshold requirement."). "Enterprise" and "employer" are "not synonymous," 29 C.F.R. § 779.203, and it is the "enterprise" — not the plaintiff's employer — that is "the unit for determining which employees not individually covered by the" FLSA are still entitled to its protections, *id.* § 779.201. A single enterprise may be "operated by one or more employers" or "composed of a number of establishments." *Id.* § 779.203. Moreover, an "enterprise is not necessarily coextensive with the entire business activities of an employer" and "a single employer may operate more than one enterprise." *Id.*

Under the FLSA, "enterprise" is defined as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). Accordingly, "[t]o establish that two entities functioned as a single enterprise, [a plaintiff] must demonstrate that the entities: (1) engaged in related activities; (2) were a unified operation or under common control; *and* (3) shared a common business purpose." *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994) (emphasis added). "In addressing each of these elements, [the Court] must construe liberally the FLSA while applying it

'with reason and in a common sense fashion.'" *Id.* (quoting *Dunlop v. Ashy*, 555 F.2d 1228, 1234 (5th Cir. 1977)).

***Related Activities.*—** Two entities' activities are "related" if they are (1) "the same or similar"; (2) "auxiliary and service activities" (*e.g.*, "central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services"); or (3) "part of a vertical structure" (*e.g.*, "manufacturing, warehousing, and retailing of a particular product[s]"). *See Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1366 (5th Cir. 1973) (emphasis omitted) (quoting S. REP. NO. 87-145, at 1660 (1961)). Activities may be related even if they are "performed in one or more establishments or by one or more corporate or other organizational units." *See* 29 U.S.C. § 203(r)(1). But even if activities are "related," they are excluded from the enterprise if they are "performed for such enterprise by an independent contractor." *Id.*

"The term 'independent contractor' as used in [§ 203(r)(1)] has reference to an independent business which performs services for other businesses as an established part of its own business activities." 29 C.F.R. § 779.233(b). The independent contractor is itself a separate enterprise, "which deals in the ordinary course of its own business operations, at arms length, with the enterprises for which it performs services." *Id.* "The essential test in each case will be whether such services are performed 'for' the enterprise by an independent, separate

8

enterprise, or whether the related activities are performed for a common purpose through unified operation or common control." *Id.* § 779.233(c).

***Unified Operation or Common Control.*—** With respect to the second enterprise element, a plaintiff need only prove "one of the two alternative requirements": "unified operation" or "common control." *Ashy*, 555 F.2d at 1231. A "unified operation" is one that has "combin[ed], unit[ed], or organiz[ed]" the "method of performing the related activities" such that the activities "are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." *Id.* at 1232 (quoting 29 C.F.R. § 779.217). This "unification may be accomplished 'through agreements, franchises, grants, leases, or other arrangements which have the effect of aligning or integrating the activities of one company with the activities of others.'" *Garza v. Deep Down, Inc.*, No. H-14-3184, 2015 WL 5883408, at *3 (S.D. Tex. Oct. 8, 2015) (Miller, J.) (quoting 29 C.F.R. § 779.218). The "common control" test "is not ownership, but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." *Ashy*, 555 F.2d at 1231 (quoting *Brennan v. Ashy*, 397 F. Supp. 1347, 1350 (W.D. La. 1975)).

***Common Business Purpose.*—** The final enterprise element requires the related activities be performed "for a common business purpose." 29 U.S.C.

9

§ 203(r)(1). Because a *business* purpose is required, nonprofits "are generally exempt" from enterprise coverage. *See Anderson v. Hearts With Hope Found.*, 713 F. App'x 278, 280 (5th Cir. 2017) (per curiam). Thus, read in isolation, this enterprise element excludes nonprofit hospitals, related institutions, schools, and institutions of higher education. *See* S. REP. NO. 89-1487, at 25-26 (1966); H.R. REP. NO. 89-1366, at 11 (1966). Wanting to bring these types of nonprofits under FLSA coverage, *see* S. REP. NO. 89-1487, at 8, Congress expanded the definition of "business purpose" in 1966 to include activities performed

> in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit) . . . .

*See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, sec. 102(a), § 3(r), 80 Stat. 830, 831 (codified at 29 U.S.C. § 203(r)(2)(A)). With this expansion "Congress singled out specific non-profits . . . that are to be deemed enterprises nonetheless." *Jacobs*, 577 F.3d at 100.

A *common* business purpose requires that the two relevant entities had "[m]ore than a common goal to make a profit." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (quoting *Brennan*, 482 F.2d at 1367). "Simply having a mutually beneficial working relationship does not, alone, create a

10

common business purpose," otherwise "virtually all companies that did business together would be deemed a single enterprise for purposes of the FLSA." *Garza*, 2015 WL 5883408, at *5. Instead, a "common business purpose exists if 'the separate corporations engaged in complementary businesses, and were to a significant degree operationally interdependent.'" *See Reich*, 23 F.3d at 115-16 (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530 (5th Cir. 1982)). Indicators of a common business purpose include "unified operation," "related activities and interdependencies," "centralization of control," and "centralization of ownership." *See Grim Hotel*, 747 F.2d at 971.

### 2. "Enterprise engaged in commerce or in the production of goods for commerce"

Once the existence and scope of the enterprise is determined, the Court examines whether the enterprise "engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 207(a)(1). "Enterprise engaged in commerce or in the production of goods for commerce" means an "enterprise" that:

(A) (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; ***and***

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

11

(B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit); *or*

(C) is an activity of a public agency.

*Id.* § 203(s)(1)(A)-(C) (emphasis added).[4]

In this case, the meaning of the phrase "engaged in the operation of a hospital" is particularly relevant. *See id.* § 203(s)(1)(B). "Hospital" goes undefined in the FLSA, but the Wage and Hour Division's Field Operations Handbook (the "Handbook") may be relied upon to "help give meaning to ambiguous statutory and regulatory phrases." *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 190 (5th Cir. 2015). The Handbook gives "hospitals" its common meaning. It defines "hospitals" as "establishments commonly known as hospitals which [are] primarily engaged in the offering of medical and surgical services to patients who generally remain at the establishments either overnight, for several days, or for extended periods." U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 12g91(a) (Mar. 31, 2016).

---

[4] Because the parties treat subsections (A), (B), and (C) of § 203(s)(1) as separate and alternate requirements, the Court does so also but does not decide the issue.

## III. DISCUSSION

Plaintiffs assert they are entitled to overtime protections under the FLSA's enterprise coverage. In their response to Defendants' Motion, to demonstrate enterprise coverage, Plaintiffs only contend that they were employed in an enterprise which "engaged in the operation of a hospital." *See* 29 U.S.C. § 203(s)(1)(B).[5]

The Court concludes that Plaintiffs do not state a claim for enterprise coverage. Initially, Plaintiffs do not specify what entity or entities allegedly constitute the enterprise that employed them. It is unclear whether Plaintiffs contend the alleged enterprise is Defendants individually, Defendants' unnamed staffing agency, a component of Defendants' unnamed staffing agency, Defendants' staffing agency *and* the various hospitals and businesses to which Defendants provided LVNs, or some combination of or part of both. Construing

---

5    Plaintiffs do not satisfy either of the other, more general, bases for enterprise coverage. *See* 29 U.S.C. § 203(s)(1)(A), (C). With respect to § 203(s)(1)(C), Plaintiffs do not allege that Defendants' enterprise "is an activity of a public agency." With respect to § 203(s)(1)(A), Plaintiffs only allege that "Defendants' had more than $500,000 in gross revenue during the relevant" year-and-a-half "time period" when they were employed by Defendants. Plaintiffs do not therefore adequately allege that Defendants' "*annual* gross volume of sales made or business done is not less than $500,000." *See id.* § 203(s)(1)(A) (emphasis added). Plaintiffs attach a financial statement for an entity called "The Right Solutions, L.L.P." to their Second Amended Complaint. Plaintiffs, however, do not allege that The Right Solutions, L.L.P. was Defendants' unnamed staffing agency or the entity which employed Plaintiffs.

13

the allegations in the Second Amended Complaint liberally, the Court considers the following two theories on which Plaintiffs appear to rely for the "enterprise" under "enterprise coverage": (1) Defendants' unnamed staffing agency combined with the hospitals, and (2) Defendants' staffing agency alone. Neither theory avails Plaintiffs.

### A. Defendants' Staffing Agency and the Hospitals Do Not Constitute an FLSA "Enterprise"

Plaintiffs' Second Amended Complaint fails to plausibly allege facts to establish that Defendants' staffing agency and the staffed hospitals constitute a single enterprise because Plaintiffs fail to plausibly allege any of the three enterprise elements. Indeed, Plaintiffs do not argue that the allegations in their Second Amended Complaint satisfies the three enterprise elements—related activities, unified operation or common control, and common business purpose. *See* 29 U.S.C. § 203(r)(1).[6]

***Related Activities.***— Plaintiffs allege that Defendants' staffing agency and the hospitals engaged in the related activity of caring for sick and aged patients. Nevertheless, Plaintiffs' pleadings fail to establish the "related activities" enterprise element. If anything, the allegations in the Second Amended Complaint

---

[6] In their recitation of the legal standard, Plaintiffs omit one of the three enterprise elements, "unified operation or common control." *See* 29 U.S.C. § 203(r)(1).

demonstrate that Defendants' staffing agency is an "independent contractor" that performs services "for" hospitals. *See id.* Plaintiffs' allegations suggest that Defendants' staffing agency is its own "independent business" that provides staffing services for different hospitals *and* multiple other businesses "as an established part of its own business activities." *See* 29 C.F.R. § 779.233(b).

***Unified Operation or Common Control.*—** Plaintiffs do not plausibly allege that Defendants' staffing agency, which supplies LVNs to multiple hospitals and other businesses across Houston, formed a "unified operation" or shared "common control" with those hospitals. Plaintiffs' pleadings do not suggest that "there is a common control center with the ultimate power to make binding policy decisions for" both the staffing agency and the hospitals. *See Ashy*, 555 F.2d at 1231. Nor do they plead facts suggesting that the staffing agency and hospitals are so "combin[ed], unit[ed], or organiz[ed]" that they effectively form "a single business unit or an organized business system." *See id.* at 1232. In fact, Plaintiffs' Second Amended Complaint is devoid of allegations regarding the staffing agency's relationship with the hospitals.

***Common Business Purpose.*—** Plaintiffs also fail to allege facts plausibly demonstrating that the staffing agency and hospitals shared a "common business

15

purpose."[7]  At best, Plaintiffs allege the existence of a "mutually beneficial working relationship."  *See Garza*, 2015 WL 5883408, at *5.  But Plaintiffs' allegations do not satisfy the relevant standard, "a significant degree [of] operational[ ] interdependen[ce]."  *See Reich*, 23 F.3d at 115.  *Cf. Garza*, 2015 WL 5883408, at *5-6 (holding that a service vendor and its *only* customer were not sufficiently operationally interdependent when all the vendor's employees were assigned to work at that customer's facilities and virtually all of the vendor's revenue came from that customer).  In fact, Plaintiffs' allegations suggest Defendants' business and the hospitals do not share a significant degree of operational interdependence.  For instance, Plaintiffs alleged that Defendants, not the hospitals or other business, "supervised and evaluated Plaintiffs' work performance," "determined Plaintiffs' work schedules," "determined Plaintiffs' rate of pay for each staffing assignment," and "maintained all of Plaintiffs' employment records."  Plaintiffs' Second Amended Complaint [Doc. # 14], ¶ 9.

---

[7]  Plaintiffs correctly observe that "activities performed by any person or persons . . . in connection with the operation of a hospital . . . [are] activities performed for a *business* purpose."  *See* 29 U.S.C. § 203(r)(2)(A) (emphasis added).  Crucially however, § 203(r)(2)(A) does not establish that such activities are automatically performed for a "*common* business purpose," the essential element of an enterprise.  *See id.* § 203(r)(1) (emphasis added).

16

P:\ORDERS\11-2018\2732MDism2.docx  190124.1606

Accordingly, Plaintiffs have not met their burden to plausibly allege that Defendants' staffing agency and the hospitals are a single FLSA enterprise and Plaintiffs fail to establish enterprise coverage through an enterprise that encompasses a hospital. *See* 29 U.S.C. § 203(s)(1)(B).

B. **Defendants' Staffing Agency Is Not an Enterprise "Engaged in the Operation of a Hospital"**

Plaintiffs also do not adequately allege that Defendants' unnamed staffing agency was itself an enterprise[8] "engaged in the operation of a hospital." *See id.*

Plaintiffs' Second Amended Complaint alleges that Defendants' medical staffing agency provides LVN staffing support services to various hospitals and other businesses.[9] No further detail regarding the relationship between Defendants' staffing agency and the hospitals is alleged. Plaintiffs' bare allegation does not suffice to render Defendants' enterprise one "engaged in the operation of

---

[8] The Court assumes without deciding that Plaintiffs' Second Amended Complaint sufficiently alleged that Defendants' staffing agency itself constituted an "enterprise" within the meaning of the FLSA.

[9] While Plaintiffs assert "Defendants' business engaged in hospital operations," this conclusory statement, which is in tension with Plaintiffs' actual description of Defendants' business, does not suffice. *Cf. Andrews v. Faith Ministries of Tex., Inc.*, No. 3:13-CV-1407-BF, 2015 WL 4257555, at *2 (N.D. Tex. July 13, 2015) (granting motion to dismiss when the basis for FLSA coverage was limited to "verbatim recitation of a portion of the enterprise coverage definition"); *Lindgren*, 2010 WL 5437270, at *3 (dismissing FLSA claim based on the plaintiff's conclusory allegations of FLSA coverage).

17

a hospital" under § 203(s)(1)(B). Section 203(s)(1)(B), codifies Congress's 1966 expansion in enterprise coverage, does not cover all enterprises which provide services to hospital enterprises. Rather, with the 1966 enterprise coverage expansion, Congress "singled out specific non-profits," *Jacobs*, 577 F.3d at 100, and brought "under the coverage of the [FLSA] *employees of hospitals*," *see* S. REP. NO. 89-1487, at 8 (emphasis added). For-profit entities that sell their services to hospitals were not the target of the expansion; those entities were already potentially covered under § 203(s)(1)(A), the section that provides the general definition of "enterprise engaged in commerce or in the production of goods for commerce." Moreover, an entity that staffs hospitals with LVNs may be eligible for FLSA coverage under § 203(s)(1)(B) if an employee establishes that the entity is a component of the hospital "enterprise." To hold a medical staffing agency is covered under § 203(s)(1)(B) simply because part of its business is to staff hospitals with LVNs would render every entity that provides staffing or other services to even a single hospital, without regard to the volume of staffing or the actual relationship between the staffing agency and the hospital, an FLSA-covered "enterprise." No court has stretched the provision this far.[11]

---

[11]  Indeed, when faced with broader language in the FLSA, courts have not stretched it to the extent Plaintiffs request. In the related context of § 203(r)(2)(C), courts and the Department of Labor have interpreted "activities performed . . . in
(continued…)

18

The conclusory and vague allegations in the Second Amended Complaint fail to satisfy Plaintiffs' burden to plausibly allege that Defendants' staffing agency is "engaged in the operation of a hospital." *See* 29 U.S.C. § 203(s)(1)(B).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs, in their third complaint filed in this action, have failed to allege an essential element of their FLSA claim. Defendants' Motion to Dismiss must be granted. It is therefore

**ORDERED** that the Defendants' Motion to Dismiss [Doc. # 18] is **GRANTED** and the lawsuit is **DISMISSED with prejudice**.

SIGNED at Houston, Texas, this 24th day of **January, 2019.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

(continued…)
connection with the activities of a public agency" to mean "the activities performed by a public agency, not the activities performed by a private, non-profit independent contractor providing services to a public agency." *See Jacobs*, 577 F.3d at 102; *Ray*, 2011 WL 5865952, at *5.